Mr. McHale. Thank you, Your Honors. May it please the Court. There's a significant disconnect between the District Court's attorney's fees order and the record in this case, and not only the record in this specific case, but the framework of patent and trademark cases generally, and as a result, the District Court's decision sets a new low bar for exceptional case findings under Octane Fitness in multiple respects. Regarding the patent claims, the District Court's decision stands for the proposition that a party can receive no adverse rulings, no sanctions, no admonitions from the court. It can receive a favorable claim construction order on critical claim terms at issue in the case, and still be subject to fees simply for subsequently losing an IPR. Let me focus you on this. So last year, we decided a case called Thermalife, in which fees were awarded and upheld on appeal on the basis of an issue, namely infringement, that had, by agreement between the parties, not been tried. Infringement was set aside early in the proceedings. The case went to trial on validity. The defendant won. The District Court said, defendant, you won, but really the plaintiff's claim was not unreasonable. Defendant said, yes, but they never should have brought it in the first place because it was unreasonable to assert infringement. So it can't be that fees can be awarded only on the basis of things that happened in the merits litigation, in the sense of past the filing of the complaint. Understood, Your Honor, but I think in this case, there's much more, and the claim construction order that the District Court issued negated the two primary prior art references asserted by the defendants, and that were ultimately the prior art references that the PTAB relied on in invalidating the patent. The District Court's claim construction order negated those references. And so at that point- What do you understand with respect to the patent case? What do you understand the basis for the District Court's awarding a fee, the weakness of your fees, the weakness of your case, right? That's correct. I believe the District Court cited two issues for purposes of its attorney's fees order. One was the alleged weakness of the claims based upon the so-called red flag warnings that were presented to Munchkin in the form of the Whiteman and Atkins prior art references. Those are the same two references that the court's own claim construction order negated. That's point one of the District Court's attorney's fees order. And the issue is not simply that was the District Court's claim construction order ultimately correct? Would this court have upheld it on appeal? That's not the relevant question. Because the relevant question for fees is not whether we would have prevailed or not prevailed. It's simply, were we reasonable in asserting the claims? And the District Court's claim construction order is critical on that point because it validated our position. What do you understand the other part of it to be? The other point, at least in terms of the patent claims, are the so-called platex cups. These are alleged prior art physical samples that were never part of the case. This is the part... Can you explain what happened in the fees proceeding with respect to the platex cup? I guess the analogy that I had in cups, or two of them I guess, had in mind in thinking about how this does or does not relate to what happened in thermal life. The question I had was, did Love and Care submit a, let's call it, a prima facie case of invalidity on the basis of the platex cups in the fee proceeding? I mean, certainly our position would be no. I believe you could locate pictures of those cups in the record, but there was no analysis. There were no claim charts that were part of the fees proceeding. Didn't they try to amend their invalidity contentions? And in the invalidity contentions, wasn't there some kind of claim analysis? Yeah, I believe at that time... Okay, so then there was something of a chart. Correct. In the underlying case, in the underlying case, there were charts. Now those charts weren't part of the argument. The court didn't address those in any significant way in the attorneys' fees portion of the case. So the theory was that these platex cups created an on-sale bar? Ostensibly, that was part of the issue. And in the PTAB proceeding, there was actually separate discovery taken to try to determine when were those cups actually on sale. I mean, all of these facts were never determined, were up in the air, were disputed facts. The IPR wouldn't consider the on-sale bar issue? That's correct. But it actually came up because Munchkin attempted to amend its claims before the PTAB, and that's where that issue became relevant. Although the PTAB never actually reached the platex cups in its decision. It found that Munchkin was not able to amend its claims for a different reason. So if I remember right, tell me if I'm wrong, the district court made some references to the platex cups but did not make findings that those platex cups were something that Munchkin was aware of and made it sufficiently clear that your patent claims were invalid, that the assertion of those claims was exceptionally weak. Am I right, the district court did not make those findings? That's true. But then the next question to me is, what did Love and Care put in the record, make a showing? What did you say in response? Maybe the district court's findings are not enough, but then the question we would face is, well, what do we do? Do we send it back for more or is the record simply insufficient so that, for example, an outright reversal would be appropriate? Yes, certainly an outright reversal is our position. There's nothing in the record, nothing that the district court included in its order about, even as it relied on that issue outside the record, there's nothing that the district court concluded that would ever tell you that those platex cups would have been a bar to patentability. In fact, during the attorney's piece hearing, the district court, the district judge actually said to counsel for L&C, there's nothing in this record that would allow me to conclude that these platex cups prevent the 993 patent. That was the district court's language in regards to those cups. Would that include the invalidity contentions that Judge Chen made reference to earlier? I don't know what was in the district court's mind there, certainly. But obviously, our position is that there's nothing here, first of all, that was new. I want to reframe here a little bit, too, because L&C has admitted that prior art that is closely related to and that generally embodies the platex cups was in fact before the PTO during prosecution. That's the Valderrama reference, right? That's correct, and that reference is listed on the face of the patent. And so our position all along was that this art is duplicative of art that was already considered by the PTO during prosecution. Just so I understand, the amended invalidity contentions, that never actually got into the case, right? That's correct. The court never decided that motion. That's correct. The court never said, yes, you can amend your contentions, or no, you can't. Because the case got stayed due to the IPR. That's correct. So was there any briefing or argument in the district court as to whether these platex cups would create an on-sale bar? Not that I'm aware of, Your Honor. The fees motion didn't go line by line, dime by dime through the claims in comparison to Absolutely not. the platex cups. Correct. Absolutely not. And again, that's why the district court during the fees hearing said, there's nothing in this record that would allow me to conclude that the platex cups bar the patent. He hadn't even assessed that issue, hadn't gone through it at all. Could we, unless my colleagues have other questions about the patent issue, could we go to the trademark issue? Sure. Again, what do you understand the district court to have based its fee award on with respect to the trademark claims? To be honest with you, Your Honor, and with due respect to the district court, I'm not quite sure. I think that the district court would probably cite the weakness of the claims. The issue there is that, again, there's no substantive rulings. The court never addressed those claims other than affirmatively allowing Munchkin to assert the claims in its first amended complaint. So there's no bad faith in bringing the claims. There's no futility. There's no motion to dismiss brought by LNC. Was there something that either LNC or the district court could point to that was new to the court in deciding the attorney's fees motion compared to any facts that the court reviewed when deciding whether to grant the first amended complaint? No, Your Honor. Because obviously LNC complained at that time that you shouldn't be allowed to amend your complaint because the mark that you wanted to assert then was already a mark you had been using, had been using for a few years, and so therefore you shouldn't be allowed to now claim that this is a new mark. Correct. All of the arguments that LNC made at the time of the attorney's fees motion and all of the facts, the very few facts that the district court cited... Okay, but you had been using that mark since 2012. Correct. So why didn't you assert it earlier? I guess the concern is that you painted a picture that you weren't really using that mark and then you decided later that, okay, now you wanted to shift over to this new mark when in fact you had been using the mark and it had been applied to commercial products. Yeah. So it's a bit of a confusing story that you have. Sure. I don't think it's an issue of us painting a picture that we weren't using the mark. We never said anything about the updated mark in our original complaint. We simply chose, because at that time the registration that Munchkin had was for what's called the original ClickClock logo. That's the mark that we pursued in our original claims. Businesses and marketing departments being what they are, the logo tweaked ever so slightly. It shifted ever so slightly over time. What do you mean by that, tweaked it over time when they all were in existence as of 2012? I think the use, this is where we were using and then this is now where we're going to shift our use, right? When you say shift, I don't understand that verb because they all existed. They all existed in 2012. So how can you say shift? They all existed and they were all being applied to different products? In terms of what the business was putting forward. In terms of what the business was putting forward. I think frankly there was probably a little inconsistency in terms of the use earlier. Well the current logo, what you refer to as the current logo, it was being used in interstate commerce as of 2012. Correct. Is that right? Correct. Okay, so you can't really tell me that the company shifted to using that mark in 2014 when in fact it had already been used beginning in 2012 in interstate commerce. I think I misunderstood. So I don't like it when you say shift over. The original ClickClock logo, I'm sorry I misunderstood. The original ClickClock logo, yes, dated to 2012 as did the updated ClickClock logo, the use. The applications, there was a registration on the original and there was not an application on the second. I think the business decided that they wanted to focus more on the second mark that they had and that's why the application trailed, that second application trailed. All of these facts, regardless, all of these facts about the use of the mark, when the mark was used, whether there was any delay on Munchkin's part in asserting those marks, all of those issues were before the district court and raised by LNC. What would be the basis for awarding fees because you delayed in asserting the mark? I'm not following that. I think it's, in our view, the whole issue of when were you using a mark and did you know about the updated mark earlier? That issue can only possibly really be relevant to the issue of did Munchkin delay in finally asserting that mark in the litigation. So what if it did delay? What is the significance of that? And the delay, because when you're moving to amend a complaint, a delay is an explicit factor that the district court considers in whether we should have been allowed to amend the complaint at that time. And so in addition to looking at was there any bad faith, would the claims be due? The idea was that there was a misstatement in the motion for leave to amend. Is that the idea? No, the idea is simply that the court was aware of all these issues. It found that, okay, there might be an issue of delay here. Munchkin arguably delayed in bringing this mark, in this case, the updated ClickLock logo. But at the time that Munchkin filed its first amended complaint, the court resolved that issue in Munchkin's favor by saying, I'm going to allow, I don't think there's any prejudice here as a result of any delay. And so I'm going to allow you, Munchkin, to amend your complaint and assert. And in your view, besides the question about allowing the amendment, the delay in asserting the claim has no legal relevance to the exceptional weakness or lack of that? That's correct, especially because, again, Munchkin was entitled to rely on the district courts resolving that issue in favor of allowing the claims. Once the district court allowed those claims, affirmatively allowed the claims, knowing all of the arguments that were on the table, Munchkin was allowed to, and it was perfectly reasonable for Munchkin to rely upon that decision. So where you end up at the end of the day on the trademark claims is that Munchkin was ultimately penalized and attorney's fees were awarded because it pursued for a short amount of time a claim that the district court expressly allowed it to pursue. And in our view, that's just not simply proper. And in fact, gives some perverse results because the district court's reasoning is really kind of fundamentally inconsistent. And when you look at the patent case and the trademark case, in the context of the patent case, Munchkin had a critical claim construction ruling that negated the primary... We're getting a little repetitive here. We're out of time. We'll give you two minutes. Okay, thank you, Your Honor. Mr. Manza. Good morning, Your Honors. Since we were just talking about the trademark claim, let's start with that. What's the basis for awarding fees on the trademark claim? The court awarded fees on the trademark in the case on the second trademark. In the first period, but not in the first period. So it did not award fees concerning the assertion in the original complaint for the registered mark. Why? What's the basis for awarding fees on the trademark? I think that it was a terribly weak case. And if you look... Because? If you were to look at appendix page 3597, you'll see hopefully color photographs of the original mark and my client mark. And when I look at it, I see no chance whatsoever that Munchkin could have prevailed on that. Did you say 3597? Those are the different versions of the Click Lock logo. Are you... Did you want to show us something that compared the Click Lock logo to your... Oh, the click gets in the middle? Click gets in the middle. That's my client's mark. Does the color make a difference? Because we have black and white. One of the differences... I'd be happy to give you my color copy. One of the differences is that in the Munchkin logos and embodiments, the predominant color is blue, whereas in the Loan & Care, the predominant color is yellow. Munchkin expressly disclaimed Click Lock... So the blue brief at 47 has the current and the Loan & Care in color. That's right. So the district court didn't make any findings about this, right? I think that's correct, Your Honor. I could give you a number of significant differences between the case, between my client's mark and theirs. And that would be... The word Click Lock by Munchkin... Would it be fair to say this is the sole justification in your view for awarding fees on the trade market claim? Was that there was no likelihood of confusion? I don't know. I think the judge saw it as a weak case. The judge... You don't know? The judge saw that they withdrew the original claim. Then they decided to assert an unregistered mark and they asserted trade dress. But in your view, I'm trying to find out what, in your view, is the basis for awarding fees on the trademark claim. You pointed out that in your view, not addressed by the district court, that there's no likelihood of confusion between the two marks. I'm now asking you, is there anything else that would justify an award of fees on the trademark claim? That it was so weak a case that they withdrew it. Withdrew it? They abandoned their trademark claim. They didn't award fees because somebody withdrew a claim? They should never have asserted this claim. Well, that's a different question. But certainly the fact that they withdrew it isn't the basis for awarding fees, right? I don't know that I would agree with that, Your Honor. Really? Any time someone withdraws a claim, they're going to get slapped with attorney's fees? Not always. Okay, well, right now, that's the only reason you've articulated that the district court gave us. So we can't obviously affirm something like that because it sounds like, in fact, the ruling is premised on the view that any time a party withdraws a claim, they're going to get slapped with fees. So it doesn't work. I don't argue that any time a litigant withdraws a claim, it should be slapped with fees. But sometimes that happens. And it's because they stated a claim that should never have been stated. Perhaps it wouldn't pass muster under Twombly or some reason it's a claim that should never been made. It was a very weak claim. Is trade dress different from trademark for purposes of what we're now discussing or is there a separate district court? Did the district court say something separately about trade dress? Which I think was a separate count of the complaint. It was a separate count. The trade dress claim was doomed because they had not been using this trade dress long enough to establish secondary meaning to engender a likelihood of confusion in the minds of the consuming public. How do we know that, though? They were using it for two years and then they filed the First Amendment complaint. But why, as a matter of law, is two years an insufficient amount of time to establish secondary meaning to a trade dress of a product design? I believe that most courts have found that two years is much too little time. Isn't that a fact-dependent inquiry, though? That is a fact issue that could be tried. It wasn't tried here, though. It did not get tried here because they withdrew the claim. How do you possibly sustain the district court when it didn't make any findings about this stuff? Uh... I don't know what further I can say, Your Honor, about that. Okay, well, maybe we'll shift to the patent claim, patent fees. In this case, the district court properly exercised its discretion. It was aware of the initial success that Munchkin had in the case. And in the fee motion, it became aware of other facts that had not yet come to light, and it reviewed the record as it must to determine the totality of the circumstances. But it never made any findings about the platex cuts in the prior arc, right? That is correct. It did not make findings on that. So what findings did it make that help you here? It was concerned, essentially, with the red flag warnings that the two pieces of prior arc on which the PTAB relied in invalidating the case were quickly located and quickly drawn to the attention of Munchkin. But isn't it clear from the record that under the district court's claim construction, the status of those two references as invalidating prior arc was quite uncertain? If that claim construction could withstand scrutiny, it would certainly call it into question. So is the award of fees on the patent claim at least partially premised on the view that the district court's own Markman order was totally unreasonable, a totally unreasonable reading of the claims? No, I do not think that is the case. But the whole idea of the patent claim being essentially frivolous is that the claims were so clearly understood that these references would invalidate them, but of course the district court read the claims differently. That's right. So to say that their patent infringement claim was exceptionally weak, you have to conclude that the district court's Markman order was particularly unreasonable in its conception of the claims. I don't. I don't have to make that argument. Although I believe that that is the case. What happened here is... But if the claim construction debate is a close question where maybe reasonable minds could differ, then certainly we couldn't sit here and say that the patent infringement theory is unreasonable, could we? We can, if I may explain. When Munchkin sued us or asserted their patent claim, they knew that we would have the right to go to the PTAB where the rule of construction for the claims would be broadest reasonable interpretation. If you look over the claim construction briefings, there was tremendous consternation over the use of the word shoulder which was introduced at the very, very end of prosecution of this patent. And the word shoulder was not explained in the amendment and it was not used anywhere in the patent specification. Everybody was trying to figure out what the shoulder is. At the PTAB and at the district court, Munchkin was alleging that there had to be a layered construction of these claim elements. Well, that was not part of the claim element and the board took the broadest reasonable interpretation and their other side's argument was that the shoulder is connected to the neck, right? The neck is joined to the shoulder. There isn't some intervening element that separates the neck from the shoulder. And yes, they did argue that. But the claim does not say that. Okay, but that's something that's debatable, right? I mean, there isn't been any finding that the defense against the IPR was frivolous, right? That is correct. There was no finding that their defense at the PTAB was frivolous. Well, then how can you award fees for the PTAB proceeding if what they were doing was non-frivolous? All I said was that there was no finding of that. I believe that their case at the PTAB was frivolous personally. Did the PTAB say that? No. Is it relevant for us to consider the appeal that we heard from the PTAB and whether we thought it was frivolous? I think it would be relevant but it's not relevant. We affirmed without opinion in that case. That doesn't imply that we thought it was frivolous to challenge the PTAB. I agree. The problem here is that Munchkin knew that this case was likely to go to the PTAB and it would there receive the broadest reasonable interpretation. That's probably why they opposed the stay. They wanted to continue litigating in the district court to try to get to a judgment before the PTAB reached a final written decision under a different interpretation of the claim language. The PTAB said, you don't have language in these claims to support the argument that you're making. Under the broadest reasonable interpretation, there's plenty of prior art. They basically agreed that we found two references. Who agreed? The board. There are plenty of cases saying the fact that you lose doesn't mean that your claim was frivolous. What's the basis for saying that the assertion of validity or non-invalidity was frivolous? The question is whether this is an exceptional case. What makes this case exceptional is that we quickly cited two pieces two or more pieces of prior art that Munchkin should have known were going to be a problem for them at the PTAB. Second, they knew that it was going to be a problem. Is that a basis for awarding a fee? Not in itself, but there were other events. There was the fact that they knew about the Playtex prior art which they They asserted, right, against somebody? Yes, they asserted a claim against Playtex. When Playtex was basically saying we have the best click lock technology or something like that. Was that a patent assertion? That was a trademark or false advertising case. To their complaint, they attached photographs of these Playtex products. They admit that they knew about the products, right? This is true. They never revealed those products to the patent office when they went to get a patent. The Valderrama reference was submitted, right? Valderrama is an engineer at Playtex. Correct. The Valderrama reference seems to, as even you acknowledged, correspond to the Playtex product. Only in part. Which they generally embodies. I'm sorry for interrupting you. Wasn't your phrase generally embodied by? I think so. The important question was is there a platform and an upstanding member that would cause this click? That is different. We provided claim charts which you can see in the appendix around 2887 and following that show why the claim that Munchkin obtained. Is that the proposed invalidity contention amendments or something? That was in the proposed amendment to the validity contention. Which were never admitted into the record. It was just attached to a motion. That was a motion that the judge did not rule on because the case got stayed a few days later. And in the fee proceeding, did you call attention to that material again? And say to the judge here's to the extent that we are asserting exceptional weakness based on the Playtex cups. Here is the case we would make to show that with the Playtex cups it was unreasonable to attach those proposed invalidity contentions I'm trying to understand what was in the fee motion you submitted. That was in the fee motion the judge referred to it at appendix 12. So the point was that there was anticipatory prior art that Munchkin had in possession. It did not disclose it to the patent office. It did not reveal it in response to interrogatories. And we just happened to trip upon it ourselves and said wait a minute what about this? Please respond to this interrogatory and we want to see those cups. So just so I understand this reference to the motion for amended invalidity contentions. This is more of a the point the district court seems to be making is that Munchkin was on notice that there was an invalidity argument based on the Playtex cups. It wasn't the district court reaching a conclusion based on the substance of those invalidity contentions that in fact Love and Care was making a very compelling case of invalidity in these amended invalidity contentions. I believe that is true your honor. And in your fee motion itself again to what extent did you do some kind of detailed comparison or any kind of substantive comparison between what is illustrated in these Playtex cups and the limitations in these claims these 993 claims I frankly have to go back and look to see what counsel argued. I think that they did argue it your honors. I know they argued the institution rates of success right those statistical percentage win rates for petitioners once an IPR petition is granted the idea being that the idea being that as soon as an IPR is initiated because of the win rate they should have given up? No The I thought that the sequence here was that we filed the IPR petition What does the win rate have to do with anything? Why did the district court cite that? What are we supposed to get out of that? The motion to stay was not filed until the institution was granted. It was not filed immediately upon filing the petition. But that's not answering the question. What what's the significance of the win rate in IPRs as far as the award of attorney's fees is concerned? The significance of citing the win rate in IPRs was in order to get the judge to stay the case and not continue to waste more money litigating at the district court He seems to think it has to do with attorney's fees It's very hard to understand It There were many reasons that the magistrate judge believed this was an exceptional case and it had to do with the weakness of the trademark case, the weakness of the patent case, the immediacy of finding these two references, the successful IPR and then finding out that Munchkin was aware of this further prior art which it managed never to tell the patent office despite the fact that these photographs of what was in their possession was dated on May 13 2011 and they filed their first patent application the following month Thank you Mr. McCallum With regard to the and understanding your Honor's point about this court's authority allowing in certain instances decisions or facts to be considered outside the record for purposes of attorney's fees we would just submit respectfully that if we're needing to litigate the validity of a patent based upon prior art that was never actually formally admitted into the case that we're just too far afield from the record at that point and that's particularly true I'm sorry can you repeat that What did they argue about the platex cups in the attorney's fees My recollection is simply that they referenced the fact that they had located the cups that they had moved to introduce the cups into the case via their motion for leave to amend their invalidity contentions and that in their view those platex cups would invalidate the patent I believe that was the gist of their argument Without submitting any specific discussion that would map the platex cups onto it or asking for as I'm reading the motion page 18 to 19 of the motion for fees asking for them now to be admitted into the record I believe that's correct allowing for the fact that you know they I'm sure they referenced the underlying invalidity contentions and incorporated them by reference into the brief but certainly I think we're talking about the content of the briefing and what was discussed that just wasn't there So we've obviously identified a number of concerns but theoretically if we were to find that this order for fees is not affirmable then why wouldn't this go back because the district court didn't address certain questions and instead relied on things that he may have been led astray by for example success rates based on PTAB by PR institutions Our view your honor would be there's no need for a remand because there's simply nothing in the record that would establish that this is an exceptional case and in order to even get close to that issue you have to go simply too far outside the record. What about the trademark infringement claim being allegedly exceptionally weak because of the differences between the two logos I mean I think if we're at the point of after the fact just trying to argue about differences between colors or how a mark sounds again we're too far from the record and certainly and we cited these cases in our briefs there have been plenty of cases that have found that claims are reasonable when the marks at issue are a lot further apart than the marks at issue here. I mean we have marks that have the same exact primary word involved. We've got a logo that looks very similar. They both have distinctive aspects of the logo that are identical in terms of arrows and interlocking arrows. So I mean our view is certainly there's enough to be at least reasonable there. We wouldn't have had to win the claim it's just was it a reasonable claim. What do the cases say about going outside the record and determining the award of attorneys fees because there's language in the Supreme Court cases saying this shouldn't be the occasion for a new litigation. Right. I mean certainly you're not going to have discovery on the merits and trial on the merits in connection with the attorneys fees. Do the cases say the district court is limited to the record that has already been made? I don't know if the cases get that specific. Certainly the gist of the authorities is that a finding of an exceptionality should be readily apparent from the record and that you shouldn't have to get into conducting many trials on the merits after the fact in order to get to a finding of exceptionality. So I think the weight of authority certainly suggests that it should be readily apparent from the record and that's just not the case here. All right. Thank you Mr. McDonough. Thank you.